```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CARLTON DOUGLAS,                                            :
                                                            :
                                      Plaintiff,            :
                                                            :
                     -against-                              :
                                                            :           18-CV-5789 (VEC)
ANTHEM PRODUCTIONS, LLC (d/b/a Anthem                       :
Sound, Stage, And Lighting), ADVANCED                       :            MEMORANDUM
AUDIO TECHNOLOGY, LLC (d/b/a Anthem                         :          OPINION AND ORDER
SSL), EVAGGELOS POULOS (a/k/a Angelo                        :
Poulos), JOSEPH LODI, and JASON OJEDA,                      :
                                                            :
                                      Defendants.           :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/2/2019

VALERIE CAPRONI, United States District Judge:

Plaintiff Carlton Douglas has sued his former employer for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.* *See* Compl., Dkt. 1. Plaintiff moves for conditional certification of a collective pursuant to § 216(b) of the FLSA and for approval of the form of notice and means of distribution. *See* Notice of Mot., Dkt. 19. For the following reasons, Plaintiff's motion to certify a collective is GRANTED. No later than **January 22, 2019**, Defendants must provide contact information for all members of the collective to Plaintiff. By the same date, the parties must submit a revised proposed notice consistent with this opinion.

## BACKGROUND

Defendant Anthem Productions, LLC ("Anthem") installs, leases, and maintains audio equipment in clubs, restaurants, and other venues. *See* Compl. ¶ 35; Douglas Decl., Dkt. 20, Ex. 8, ¶ 2. Anthem is the successor-in-interest to Defendant Advanced Audio Technology, LLC ("AAT"), which merged with Anthem in January 2016. *See* Compl. ¶¶ 16–17; Douglas Decl. ¶ 4. Defendant Evaggelos Poulos is the CEO of Anthem and was the CEO of AAT prior to the

merger. *See* Compl. ¶¶ 12–13; Poulos Aff., Dkt. 30, ¶ 1. Defendant Jason Ojeda was a shareholder and manager of AAT until early 2015, when he sold his shares and resigned from the company. *See* Ojeda Aff., Dkt. 31, ¶¶ 2–3. Defendant Joseph Lodi was a shareholder and manager of AAT until the January 2016 merger, at which time Lodi sold his shares. *See* Compl. ¶¶ 14, 16; Douglas Decl. ¶ 4.[1]

Between April 2014 and August 28, 2017, Plaintiff worked as an audio technician for Defendants. *See* Douglas Decl. ¶¶ 2–6. Working in crews of four, audio technicians installed and performed maintenance on Defendants' audio systems in clubs and event venues throughout New York. *See id.* ¶¶ 6–7.

Throughout Plaintiff's employment, Defendants had a policy of paying overtime to employees only after they worked 45 hours per week. *See* Douglas Decl. ¶¶ 9–11; Collins Trial Tr., Dkt. 20, Ex. 9, at 64. Although the wage-and-hour laws require that employees be paid overtime after they work 40 hours per week, Defendants believed that employees took a one-hour break for lunch each day (totaling 5 hours per week); thus, in order to avoid paying employees overtime for their lunch breaks, Defendants paid overtime to employees only after they worked 45 hours per week. *See* Collins Trial Tr. at 64.

Plaintiff asserts that he and all other audio technicians were not permitted to take one-hour lunch breaks; rather, Defendants required audio technicians to eat lunch "in the span of ten to twenty minutes" or, "if it were really busy," to eat while they worked. *See* Douglas Decl. ¶ 8. Plaintiff, therefore, sues for the overtime pay that he allegedly should have received "for hours forty through forty-five" that he worked each week. *See id.* ¶ 9.

---

[1] It is unclear whether Lodi resigned at the time that he sold his shares or whether he became a manager of Anthem following the merger.

2

## DISCUSSION

**I.     The Applicable Law**

The FLSA permits employees to maintain an action "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). In determining whether to certify a collective action, courts in the Second Circuit use a two-step process. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010). At the "notice stage," plaintiffs must establish that other employees "may be 'similarly situated'" to them. *Id.* at 555. To meet this burden, a plaintiff need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (citing *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

While a plaintiff's burden at this stage is modest, "it is not non-existent," *Fraticelli v. MSG Holdings, L.P.*, No. 13-CV-6518, 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014) (quoting *Khan v. Airport Mgmt. Servs., LLC*, No. 10-CV-7735, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011)), and generally cannot be satisfied by "unsupported assertions," *Myers*, 624 F.3d at 555. Courts, however, employ a "low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (citing *Sbarro*, 982 F. Supp. at 261). At this first stage, courts do not examine "whether there has been an actual violation of law." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citing *Krueger v. N.Y. Tel. Co.*, No. 93-CV-178, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993)).

At the second stage, when there is a more developed record, the named plaintiffs must prove that "the plaintiffs who have opted in are *in fact* 'similarly situated' to the named plaintiffs." *She Jian Guo v. Tommy's Sushi Inc.*, No. 14-CV-3964, 2014 WL 5314822, at *2

(S.D.N.Y. Oct. 16, 2014) (quoting *Myers*, 624 F.3d at 555). The action may be "'de-certified' if the record reveals that [the opt-in plaintiffs] are not [similarly situated], and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555.

## II. Application to This Case

### A. Plaintiff's Motion to Certify a Collective Is Granted in Part

#### 1. The Collective Will Include All Hourly Employees

Plaintiff moves to certify a collective comprised of all "[c]urrent and former hourly employees" who worked for Defendants during the relevant time period. Compl. ¶ 20; *see also* Pl.'s Mem. of Law, Dkt. 21, at 13–15. Defendants object to certification of a collective comprised of *all* hourly employees, but Defendants do not oppose a collective limited to audio technicians and other full-time employees who worked on Defendants' audio systems at restaurants, clubs, and other venues ("off-site employees"). Defs.' Mem. of Law, Dkt. 29, at 1, 5. In Defendants' view, the collective should not include employees who worked in Defendants' office and warehouse locations ("on-site employees"). *See id.* at 5.

Plaintiff has the better argument. First, Plaintiff offers ample evidence that Defendants' policy of paying overtime only after 45 hours per week extended to all hourly employees, not solely off-site workers. In a prior proceeding, Poulos provided sworn testimony that Anthem's general "overtime policy" was for employees to "get paid overtime after 45 hours" in order to accommodate employees' lunch breaks. Collins Trial Tr. at 64. In the same proceeding, an audio technician testified that when he was first hired, Poulos told him that the company's general "pay policy" was that "[a]fter 45 hours you start collecting overtime." *Id.* at 17. While neither Poulos nor the technician expressly stated that the 45-hour policy extended to all hourly workers, each implied that the policy was generally applicable to all Anthem employees. *See id.*

at 17, 64.  Furthermore, in the present motion, Plaintiff asserts in a sworn declaration that the 45-hour policy extended to all "hourly employees," Douglas Decl. ¶¶ 9–10, and Defendants do not deny this allegation in their response to Plaintiff's motion, *see* Defs.' Mem. of Law.  In short, although the record is not perfectly clear, there is sufficient evidence that Defendants' 45-hour overtime policy extended to all hourly employees.

Next, Plaintiff offers evidence that audio technicians and other "off-site employees" were not permitted to take one-hour lunch breaks.  Specifically, Plaintiff asserts in his sworn declaration that he typically worked in "a crew of approximately four audio technicians," Douglas Decl. ¶ 7, and that he observed that the entire crew was frequently required to work through their lunch breaks, *id.* ¶ 8.[2]  Taking these assertions as true, these off-site employees were not paid overtime for "for hours forty through forty-five" that they worked each week. *Id.* ¶ 9.

Defendants argue that Plaintiff has not offered evidence that "on-site employees" were also required to work through their lunch breaks.  *See* Defs.' Mem. of Law at 5.  Defendants assert that "on-site employees" were provided 1 hour each day for lunch and were not required to work during this time.  *See id.*; Poulos Aff. ¶ 2.  Thus, Defendants argue, the 45-hour overtime policy properly accounted for the 5 hours per week that on-site employees spent having lunch. Defs.' Mem. of Law at 5.

Defendants' argument makes no sense and runs counter to the logical inference to be drawn from Poulos's affidavit.  In his affidavit, Poulos asserts that any lunch time that on-site

---

[2] *See Mata v. Foodbridge LLC*, No. 14-CV-8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015) ("[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit." (quoting *Hernandez v. Bare Burger Dio Inc.*, No. 12-CV-7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013)).

employees spent working was "credited to the employee as working time," Poulos Aff. ¶ 2—thus implying that any time spent eating lunch and not working was *not* credited as working time. If that is the case, then a policy of paying overtime to employees only after they were credited with having worked 45 hours per week—in order to account for 5 hours per week spent having lunch—makes no logical sense.

Accordingly, Plaintiff has offered sufficient evidence that Defendants failed to pay overtime to *all* hourly employees, regardless of whether these employees took one-hour lunch breaks or not. The Court, therefore, grants conditional certification of a collective comprised of all hourly employees who worked for Anthem or AAT.

### 2. The Collective Will Be Limited to Hourly Employees Who Worked for Defendants Between June 26, 2015 and the Present

Plaintiff argues that the notice of collective action should be directed to employees who worked for Defendants within the three years prior to the date that the Complaint was filed, because the statute of limitations for FLSA claims is three years (or two years in the case of a non-willful violation). *See* Pl.'s Mem. of Law at 16–17; *see also* 29 U.S.C. § 255(a); *Keawsri v. Ramen-Ya Inc.*, No. 17-CV-2406, 2018 WL 279756, at *6 (S.D.N.Y. Jan. 2, 2018); *Iriarte v. Cafe 71, Inc.*, No. 15-CV-3217, 2015 WL 8900875, at *5 (S.D.N.Y. Dec. 11, 2015). Because the Complaint was filed on June 26, 2018, *see* Compl., Plaintiff requests that the Court include in the collective all hourly employees who worked for Defendants between June 26, 2015 and the present, *see* Pl.'s Mem. of Law at 17.

Defendants agree that the notice period should begin three years prior to the date that the Complaint was filed, but Defendants argue that the notice period should end on August 28, 2017,

the date that Plaintiff ceased working for Defendants. *See* Defs.' Mem. of Law at 3–4.[3]

Defendants argue that "[i]n the class action context," a named plaintiff must "possess the same interest and suffer the same injury as the class members" in order to have standing to represent them. *Id.* at 4 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). In Defendants' view, the same standard should apply to a motion for conditional certification of a collective action brought under the FLSA. *See id.* at 4–5.

The Court disagrees. Plaintiff clearly has standing, as he alleges that Defendants deprived him of the overtime pay to which he is statutorily entitled. The question, then, is whether Plaintiff's injury is the *same* as the injury of potential members of the collective who were employed after he resigned. The FLSA, however, does not require that a plaintiff possess the "same interest" and "same injury" as members of a collective, as is required in Rule 23 class actions. *See Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 351–52 (S.D.N.Y. 2017). The FLSA requires only that a plaintiff be "similarly situated" to other employees, in order to certify a collective action on their behalf. 29 U.S.C. § 216(b); *see also Myers*, 624 F.3d at 554–55; *Viriri*, 320 F.R.D. at 351–52; *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 565 (S.D.N.Y. 2012) ("The relevant issue . . . 'is not whether Plaintiffs and [potential opt-in plaintiffs] were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week.'" (quoting *Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294, 323 (S.D.N.Y. 2011))). As other district courts have held, "a modest temporal gap between the plaintiff's employment and the

---

[3] Defendants argue that the notice period should begin on September 28, 2015 because, they say, the Complaint was filed on September 28, 2018. *See* Def.'s Mem. of Law at 4. The Court assumes that this statement is a typo, as the Complaint was clearly filed on June 26, 2018, *see* Compl., Dkt. 1; indeed, Defendants had already filed their opposition to Plaintiff's motion for a collective by September 28, 2018.

7

employment period of other class members" does not "prohibit[] or even counsel[] against conditional certification." *Viriri*, 320 F.R.D. at 352; *see also Hallissey v. Am. Online, Inc.*, No. 99-CIV-3785, 2008 WL 465112, at *2 (S.D.N.Y. Feb. 19, 2008) ("While dates of employment and hours worked are unique to each employee, it does not necessarily create dissimilarity under the FLSA."); *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007). That principle applies with added force where, as here, "the only difference identified by Defendant[s] is the period of employment, not the terms or conditions of that employment," and thus, certification poses no risk of "disparate factual and employment settings" among members of the collective. *Viriri*, 320 F.R.D. at 352.[4] For all these reasons, Plaintiff's collective action need not be limited to employees who worked for Defendants prior to the time that Plaintiff terminated his employment.

Accordingly, Plaintiff's collective action may include all hourly employees who worked for Defendants between June 26, 2015 and the present.

### 3. The Form of Notice and Means of Distribution

The form of notice is left to the broad discretion of the District Court. *Ramos v. Platt*, No. 13-CV-8957, 2014 WL 3639194, at *5 (S.D.N.Y. July 23, 2014) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Although the parties largely agree on the form of notice and means of distribution, the Court will offer some guidance on these issues.

First, Ojeda argues that his name should be excluded from the notice of collective action because he ceased working for Defendants more than three years prior to the time that the

---

[4] Defendants cite a case in the Northern District of New York that held that the plaintiff did not have standing to represent members of an FLSA collective who worked for the defendant after the date that the plaintiff left Defendant's employ. Defs.' Mem. of Law at 5 (citing *Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 5:17-CV-0359, 2018 WL 679477, at *8 (N.D.N.Y. Feb. 1, 2018)). That case relied on cases interpreting Rule 23(a)'s requirements to reach that conclusion. *See Maddison*, 2018 WL 679477, at *8. In light of the clear differences between Rule 23 and the FLSA, the Court does not find the case to be persuasive.

Complaint was filed and, therefore, outside of the FLSA statute of limitations period. *See* Ojeda Aff. ¶ 6. Plaintiff does not object to excluding Ojeda's name from the notice. *See* Pl.'s Reply Mem. of Law, Dkt. 32, at 2 n.1. The Court, however, does not believe that excluding Ojeda's name from the notice would be appropriate. Ojeda did not move to dismiss the FLSA claims against him, whether on statute of limitations grounds or otherwise. *See* Ojeda Answer, Dkt. 28. And, despite Plaintiff's agreement to exclude Ojeda's name from the notice, Plaintiff does not concede "the merit[s]" of Ojeda's argument. *See* Pl.'s Reply Mem. of Law at 2 n.1. Moreover, Plaintiff has not voluntarily dismissed the FLSA claims against Ojeda. Because the FLSA claims remain live and pending against Ojeda, Ojeda may properly be sued by members of the collective for these claims.[5] For all these reasons, the request to exclude Ojeda's name from the notice of collective action is denied.

Next, the parties agree that Defendants should produce to Plaintiff contact information for all potential members of the collective, including names, mailing addresses, telephone numbers, and email addresses. *See* Pl.'s Mem. of Law at 17; Def.'s Mem. of Law at 7. The Court agrees that discovery of this information is appropriate and orders Defendants to produce it to Plaintiff in an excel spreadsheet no later than **January 22, 2019**.

Additionally, Plaintiff requests permission to send notices through email and text message, *see* Pl.'s Mem. of Law at 19, and Defendants do not appear to object to this request (although Defendants have not expressly consented to the request either), *see* Defs.' Mem. of Law at 7–8. The Court agrees that the proposed means of distribution is appropriate and, thus, this request is granted.

---

[5] Of course, if Ojeda wishes to move for summary judgment on statute of limitations grounds, he may do so. At this time, however, the Court sees no basis to exclude him from the collective action.

Next, Plaintiff argues that he should be permitted to send reminder notices to potential members of the collective prior to the close of the opt-in period. *See* Pl.'s Mem. of Law at 18. This request is granted. Plaintiff may send one reminder notice to potential members of the collective no more than 15 days before the close of the opt-in period.

Next, the parties agree that the notice should be translated into Spanish, as Plaintiff states in his declaration that he has observed that some hourly employees speak Spanish as their native language. *See* Douglas Decl. ¶ 16; Defs.' Mem. of Law at 7; Pl.'s Mem. of Law at 21. The Court agrees that translation into Spanish is appropriate; accordingly, the parties are ordered to confer on a mutually agreeable translation.

The Court will not rule on the balance of the parties' requests regarding the form of notice and means of distribution. The parties are ordered to confer and to attempt to resolve any remaining issues. No later than **January 22, 2019**, the parties must jointly submit a revised proposed notice and a letter outlining any points of disagreement.

### 4. The Court Will Consider Tolling the Statute of Limitations on a Case-by-Case Basis

Finally, Plaintiff requests that the Court equitably toll the FLSA's statute of limitations for potential members of the collective while Plaintiff attempts to effect notice. *See* Pl.'s Mem. of Law at 21. Whether tolling is appropriate is best addressed on an individual basis. *See Balderramo v. Taxi Tours Inc.*, No. 15-CV-2181, 2017 WL 2533508, at *6 (S.D.N.Y. June 9, 2017); *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565–66 (S.D.N.Y. 2015). Accordingly, the Court declines to toll the statute of limitations for all prospective plaintiffs at this time, but prospective members of the collective may move for tolling, as needed, on an individual basis.

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion for collective certification is GRANTED. The Court conditionally certifies a collective of all hourly employees who worked for Anthem and/or AAT between June 26, 2015 and the present. Ojeda's request to exclude his name from the notice of collective action is denied. Defendants are ordered to provide contact information for all potential members of the collective (including names, mailing addresses, telephone numbers, and email addresses) in an excel spreadsheet to Plaintiff's counsel no later than **January 22, 2019**. Plaintiff's request to send notices to potential members of the collective via email and text message is granted. Plaintiff's request to send reminder notices is granted, subject to the limitations set forth in this opinion. The notice must be translated into Spanish. Equitable tolling will be considered on a case-by-case basis. The parties are ordered to confer on any other issues regarding the form of notice and means of distribution. No later than **January 22, 2019**, the parties must submit a revised proposed notice and a letter outlining any points of disagreement.

Should the parties mutually agree that a referral to this case's assigned Magistrate Judge or to the District's Court-annexed Mediation Program would be helpful in resolving this case, they should promptly notify the Court.

The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 19.

**SO ORDERED.**

**Date: January 2, 2019**  
**New York, New York**

_____  
**VALERIE CAPRONI**  
**United States District Judge**